UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

   vs.                                    Case No. 11-20129

VINCENT WITORT,   D-8,                 Honorable Robert H. Cleland

       Defendant.

_____/

## FIRST SUPPLEMENT TO MOTION and INCORPORATED BRIEF FOR MISTRIAL BASED UPON DUE PROCESS VIOLATIONS DEPRIVING DEFENDANTS OF A FAIR TRIAL

### *Government concurrence was sought and denied.*

NOW COMES Defendant, VINCENT WITORT, by and through his attorneys, Kimberly W. Stout, Byron H. Pitts and Phillip Comorski, together with Scott Sutherland, Patrick McKeoun, Jeff Smith, Paul Darrah, Cary Vandiver, and David Drozdowski, by and through their respective attorneys, and moves for a Mistrial.   In support thereof, Defendant states as follows.

### Failure to Disclose *Brady* Material in a Manner That Allows the Defense Time to Investigate

William Thomas Smith aka Billy Wadd testified on November 18 and November 19, 2014.  On or about August 29, 2014, Defendant's received thousands of pages of *Jencks* and countless Form 302 interviews.  Once trial was underway, on October 14, 2014, the government disclosed that the "source" referred to as "Person E" was in fact,

Billy Wadd.   Included in the thousands of pages was a short grand jury transcript, numerous Form 302's, and other documents regarding Person E.   NOWHERE in the Billy Wadd discovery was a CD of the *Gangland* TV episode regarding the DDMC.   The episode was made for TV in 2010 as a sensational story about the DDMC with Billy Wadd as the star of the 30 minute show (now on Youtube).   NOWHERE in the discovery was the transcript of Billy Wadd's testimony in the murder trial of *People vs John Wolfenbarger.*   NOWHERE in the discovery was the testimony of Billy Wadd at the investigative subpoena hearing of Billy Wadd prior to the murder trial in 2002. NOWHERE in the discovery was numerous interviews referenced by Agent Mizer on November 20, 2014 regarding relevant contemporaneous investigations of the Highwaymen Motorcycle Club and other clubs.   Witnesses from the Highwaymen have been called, including Mad Anthony and Byrd.

Approximately two (2) weeks ago, the defense was given four (4) CD's of consental recordings that included barely audible recordings made by Billy Wadd for the government.   One of the CD's was a very long recording Billy Wadd made at his bar, The Copa.   Much of it was simply music and inaudible conversation.   The government did not tell the defense that these would not be played as evidence and much time was wasted by defense counsel trying to understand the recordings.

On direct examination, the government elicited testimony about Billy Wadd's revelation to come clean and cooperate due to his nephew, John Wolfenbarger's involvement in a murder of five (5) people including three (3 ) children.   Wadd further testified that after he went to the police to testify against his nephew, John Wolfenbarger, he feared for his life.   He testified on direct that his cooperation in this

murder case was frowned upon by the Devil's Diciples' members.  He further testified that following his testimony in the murder trial which was completely UNRELATED to the DDMC, there were  three (3) attempts on his life.

In the transcript of Wadd's testimony at the *Wolfenbarger* trial, Wadd testified that he was raided in November 2012, BEFORE the murders.  The task force that included federal agents, took weapons from Wadd's house.  Wadd knew at that time, in November of 2012, that he was a Felon in Possession facing twenty (20) years in prison.  He also had a child support warrant out for his arrest.  The transcript also revealed that Billy Wadd was on lifetime probation.  The transcript revealed that Wadd reached out to one of the task force agents who participated in the raid of his home after the murders to offer cooperation.  The transcript also revealed that Wadd lied to the police about what he knew when he first met with them.  The  transcript of Investigative Subpoena testimony that has NEVER been disclosed to the defense contains many more lies  stated by Wadd as referenced in the Wolfenbarger transcript.

This testimony of Wadd at the murder trial of Wolfenbarger is *Brady* and *Giglio* as it clearly evidences Billy Wadd's motive to testify against the DDMC.  Further, the transcripts which were obtained by undersigned revealed that Wadd may very well have been involved in the robbery that was the impetus of the murders.  There is most presumably further exculpatory information contained in the testimony of Wadd pursuant to investigative subpoena.

It is clear that once the government directed testimony about the murders, and about Wadd's cooperation against the DDMC,  Wadd's possible prosecution for Felon in Possession and his numerous lies to the police about the murders,  became

impeachment and exculpatory.  Clearly, Wadd had a motive to lie against the DDMC. Although undersigned was able to procure a copy of the Wolfenbarger transcript, she never received the testimony pursuant to investigative subpoena, nor any other testimony and/or prior sworn statements of this witness.  Morever, undersigned has been unable to discover any interviews of Mr. Smith pertaining to witnesses Mad Anthony or Byrd.  Counsel requested an adjournment of Mr. Smith's cross-examination to further explore this information; said adjournment was denied.

Interestingly, the government did provide in its August 29th disclosure a 1993 trial transcript with regard to another witness, but failed to provide the Wolfenbarger transcript.[1]

Defense counsel realizes that "the government is not required . . . to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own."   See United States v Runyan , 290 F.3d 223, at 246(5th Cir. 2002).   However, it never becomes the defense's burden to feret out Brady material. See Banks v Dretke, 540 U.S. 668 (2004).    in this case, due to the disclosure of over 10,000 pages of discovery as well as hours of consentual tape recordings in the last sixty (60) days,  and the disclosure of the witness list just days before trial, it is obvious that numerous delays would be necessary for the defense to adequately research each witness for cross examination.

With regard to Mr. William Smith in particular, it was **not** disclosed in discovery that he would testify about three (3) alleged attempts on his life.  Nor was it clear that he would claim that the murder trial of his nephew changed his life, especially since he may

---

[1] Undersigned has continuously requested Form 302's or any statements relative to the 1993 transcript that MUST exist.

4

have been involved.   Further, the criminal record of Mr. Smith in which the defense made specific requests for during trial and on the record, did not reveal that he was facing a Felon in Possession or was on lifetime probation.   Although the defense recognizes its obligation to  prepare,  here, the defense had NO access to 302's in other investigations, the testimony from an investigative subpoena, a CCH with all criminal activity, and other law enforcement materials.

Further, the direct testimony that Wadd's life was threatened three (3) times had to have been memorialized by an agent at some time before Mr. Smith's testimony in this Court.   The government shamelessly stated in open Court that  the only prior memoralization of this is from Gangland, the TV show, and that  further,  this sensational TV show was sufficient notice to the defense.   *See* Transcript Nov. 18, 2014.   Does that mean in the future the defense should watch sensationalized TV's shows to get discovery?

To the contrary, witness Mizer testified that the DEA took the information from Mr. Smith regarding the threats.   Yet, there has been **no** Form 302 provided to the defense indicating same.

A mantra of the government in this case is that they are aware of their discovery obligations.   We do not challenge that.   However, the problem is that they do not understand the import of  the obligation.

**Failure to Disclose Discovery in a Manner
That Allows the Defense Time to Prepare**

The above named Defendants filed the following Motions several months before trial:

- Motion for Witness List (Docket No. 754)

- Motion for Early Production of Jencks Material (Docket No. 757)

- Motion for Order for Disclosure of Expert Witness Testimony (Docket No. 764)

- Motion to Compel Compliance with Standard Order of Discovery, Fed. Crim. P. 16 and to Produce *Giglio* and *Brady* Material Before Trial (Docket No. 765)

- Motion to Reveal Identity of Informants and Contents of Deals (Docket No.. 760)

The government agreed to fully comply with its obligations with all discovery requests, and the defense therefore, agreed to withdraw its Discovery Motion. Further, the government, with the Court's encouragement, agreed to provide Jencks material on August 29, 2014.  Approximately, 3,573 pages were received on a CD (bates numbers 34,443 through 38,016).  *Giglio* materials were not included in this production.

On September 16, 2014, the defense filed a "Renewed Motion to Compel Compliance with Standard Order of Discovery, Fed.R.Cr.P. 16, and to Produce *Giglio* and *Brady* Material Before Trial." (Docket 975).

Jury selection was held September 29, September 30, and October 1, 2014. This Honorable Court adjourned trial until October 14, 2014,  recognizing that both counsel and the Defendants had not been able to review all the materials provided, and recognizing that additional materials including plea agreements, plea transcripts, cooperation agreements, and the like, had not yet been received.

On or about October 8, 2014, the government provided another CD with 102

6

various documents on it including Rule 11 Plea Agreements, Plea hearing transcripts, Cooperation Agreements, and the like.

On October 11, 2014, the government emailed an exhibit list of close to 200 pages.

On October 13, 2014, the government produced 1,297 pages of materials including criminal histories, search warrants, and numerous 302's.

The trial began on October 14, 2014, with further jury selection.  On October 14, 2014, the government produced 328 pages of printed documents, and Production 10 CD which included 1,225 of additional Jencks and Form 302s.  Hence, over 7,500 pages of documents had been produced since the August 29th disclosure of 3,573 pages, **for a total of over 10,000 pages of materials**.  (Defense counsel's first Motion for Mistrial was heard on this date).

The defense gave opening statements on October 15, 2014.  On October 15, 2014, 487 pages of printed materials were produced by the government including interviews of witness Karen Casey, Anthony Clark and agent notes.  Further, Production 11 which included hundreds of pages of documents and 4 videos were given to counsel. This production was particularly relevant to John Pizzuti, yet counsel did  not have the opportunity to listen to the countless hours of tapes recorded by Pizzuti at parties and the government did not provide any assistance as to the importance.

On October 16, 2014, 325 pages were handed to defense counsel at the commencement of the trial day.  This included 302's, transcripts, and criminal histories.

Thus, FOLLOWING opening statements, and after testimony began, the government produced an addition 4,012 pages of discovery, and 4 audio/videos.

Since October 16, 2014, criminal histories, 302's, exhibits, and transcripts continue to be produced on a nearly daily basis. Further, despite providing the defense with only ONE copy of the "Government's Exhibits", it turned out that hundreds and hundreds of pages of exhibits were not included in the one box of documents provided. The parties had an impromptu meeting to review these documents in a very cursorily fashion with the understanding that should the government wish to admit the document, it would perhaps be redacted or further review allowed. Yet not once has the defense been given prior notice of the exhibits the government admits on any given day.

On October 27, 2014, 96 pages of additional criminal history information was distributed. This was provided on the 7th day of trial - a day in which, through Agent Fleming, hundreds of pages of exhibits never reviewed by defense counsel were introduced. These exhibits are discussed below under the section "counter-surveillance."

On October 28, 2014, a new discovery was given to the defense regarding Ed Taylor at 12:30 p.m.

On November 18, 2014, at 8:58 p.m., the government provided the followed, non- OCR'd, discovery to the defense regarding Sarah Sweet: four (4) Form 302's, Cooperation Agreement, Grand Jury transcript (95 pages), and other discovery. On November 19, 2014, the government notified the defense that Sarah Sweet would be called to testify the following day. The new discovery contained for the first time, allegations that the DDMC members were purchasing meth precursors from one Mathew Morse - no time, date or year was identified. Mathew Morse is not charged in this Indictment, but has been charged in a separate action. The government has not

provided any discovery as it relates to Mr. Morse's statements.   Ms. Sweet was then not called on November 20, 2014.


### Ambush of Obviously Prejudicial and Inflammtory Information

The government through either intentional misconduct or simply biting off more than they can chew, have turned this case into a trial by ambush.  Discovery disclosure has been haphazard, disorganized, and designed to put defense counsel in a position of not being prepared to address issues **before** they come before the jury.  This was as clear as day on Monday, November 10, 2014 when Agent Fleming was again called to the stand and defense counsel had no indication of what his testimony would be. Through Fleming, the government played three (3) calls from one, Werth,.  These calls were apparently admitted into evidence as part of an exhibit listed as "R." The R exhibit was couched in the testimony and phone calls presented through another witness, one J. Pizzuti.  R 1 through R 12 included these 3 calls undetected by any of defense counsel.   The Werth calls were produced to defense counsel on yet another CD received on or about September 3, 2014, which included 19 Werth jail calls.  These calls seemed irrelevant to undersigned and were discounted.

The calls included a wealth of irrelevant inflammatory conversation from a man who isn't even a Devils Diciple to another man who is a Highwayman.  The language included the "n" word.  The "n" word today is the most volatile word in the English language .  Careers are ruined and jobs lost from the use of this ugly word.  Yet, the government saw no need to redact it from the recording or transcript.  The government continues to hide behind the fact that it was "disclosed."

This position is cynical and disingenuous because the discovery has provided as much disinformation as information and most of the important discovery has been provided in the last 60 days, some of which is clearly Rule 16 and should have been provided years ago.   An example of the disinformation is the Billy Wadd tapes referenced above, in section I.  These tapes which took hours and hours of time to listen to by defense counsel in the midst of trial, were never presented, and yet to be fully understood by the defense.

No matter what the governments' excuse for admitting these exhibits, there is no rational excuse for allowing the "n" word to be included and heard by the jury, not once, but several times.  (Other inflammatory words were used as well).  If the government does not understand this issue, then there is even a bigger due process issue involved.

The introduction of the inflammatory and irrelevant Werth calls came on the tail of the use of the word "polygraph" in the courtroom during the admission of the hundreds of pages of documents that came in through Fleming.  This topic is the subject of a separate motion.

### Failure to Timely Disclose Expert Witnesses

Federal Rule of Criminal Procedure 16(a)(G) states that "at the defendant's request, the government must give to the defendant a written summary of any testimony that the intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case-in-chief at trial."  Despite repeated requests, and two (2) motions for compliance with Rule 16, the government did not give notice of the Meth Lab expert witness, nor any summary of his testimony until approximately one (1) week before his testimony.  Mr. Saucedo testified on October 17, 2014 and the power point was

available for pick up together with thousands of other documents in the late afternoon of October 9, 2014.

Within the above production, the government provided a "power point" presentation and resume regarding Saucedo, a methamphetamine lab expert. On or about October 14, 2014, the defense filed a Motion in Limine to Preclude in Whole, or in Part, the Testimony of Witness Anthony A. Saucedo (Docket 1039).

The defense was forced to file a Motion in Limine, with an eight (8) page brief, while in trial. This took undersigned counsel away from much needed time to focus on all the new discovery productions.

THE DEFENSE STILL AWAITS disclosure of the government's so-called "gang" expert's summary.


### Narrative Testimony of Agent Violates Due Process

On November 17, 2014, Agent Fleming summarized and rehabilitated the testimony of witness McFadden. The government has broken new ground in the art of trial presentation by calling an agent to provide a mini-closing argument after the testimony, direct and cross, of a witness in the middle of trial.


### Failure to Timely Disclose Witness Lists Doesn't Allow Sufficient Time to Prepare

Due to the difficulty for the defense to prepare for cross examination with continued productions of new discovery, this Court ruled that the government provide the defense with a witness list the Friday before, for the following week.

On October 17, 2014, the first Friday of trial, the government provided the

defense with the following witness list for the next week:

- Jerald Peters
- S.A. Opperman
- John Pizzuti
- Anthony Clark
- S.A. Flemings

The defense prepared for the week of October 20, 2014 based upon the above provided list. At 7:27 a.m. on Monday, October 20, 2014, while driving to court, defense connsel received an email listing the following additional witnesses:

- Gary Nelson
- Jason Cook
- Ed Taylor
- S.A. Langdon
- S.A. Wahl
- Michelle Richards
- Dan Burby
- Lewis Maley

On Thursday, October 23, 2014, at 7:03 a.m., the government emailed the defense, excluding counsel Sid Kraizman, that it was adding three (3) additional witnesses:

- Clewitt
- Matatall
- Frances Harnen

On Thursday, October 23, 2014, the government in fact called five (5) of the witnesses it had added to its witness list that Monday and that day, to wit: Special Agents Wahle, Langdon and Harnen, and Officers Clewitt and Matatall. Defense counsel objected. This Honorable Court attempted to remedy the difficulty for counsel to be prepared for cross-examination by suggesting that counsel can recall the witness for cross at a later date.

The government argued that Defendant Witort has three (3) attorneys and should not have any difficulty preparing for a witness while in court.  To the contrary, no matter how many lawyers Mr. Witort has, the lawyers cannot prepare for last minute witnesses in any effective manner.  This is especially true when 302's and criminal histories are turned over piecemeal.

On October 24, 2014, the government provided a list of 18 witnesses; many were never called.

On October 31, 2014, the government emailed defense counsel that it intended to call:

- Danny Burby
- Scott Perkins
- Gary Nelson
- Ronald Lambert
- Jamie Franks
- Ed Taylor
- John Scudder
- William Lonsby
- William Fleming

On Saturday, November 1, 2014, at 12:22 p.m., additional witnesses were added to the list:  Ray Laturno, Charles Myatt, and Lauri Ledford.

The defense is faced with a monumental task of reviewing tens of thousands of pages of discovery received in 2013, and then the additional 10,000 plus pages received in the last 2 months, in preparation for witnesses.  This task is made impossible when the sands are shifting by last  minute changes to not one, but several witnesses, and continuous additional discovery.

### Counter-surveillance "Theory" Allows for Irrelevant Exhibits

Countless documents have been received into evidence under the government's theory that the documents represent the Defendant's counter-surveillance of the FBI's investigation.  This includes copies of cases (court opinions dealing with issues in this trial), news paper articles, law enforcement manuals regarding "outlaw" motorcycle clubs/gangs, etc.   Most of the exhibits were admitted over objection on October 27, 2014.  The defense had no notice by the government that the Agent would take the stand and introduce hundreds of pages of documents.  As a matter of fact, undersigned counsel inquired of the government what witness would follow Michelle Richards, and received no reply.

Defendants object to these materials as irrelevant, or if relevant, clearly prejudicial as causing confusion, and misdirection.  Undersigned respects the Court's ruling that these "exhibits" will not go into the jury room "as is" but is concerned about time limitations should the issue arise.


### Conclusion

This is a case being tried in a temple of justice and the goal of the government should be a fair trial for all.  Defendants are being denied their due process rights as guaranteed by the fifth, sixth, and fourteenth Amendments to the U.S. Constitution, as well as their right to the effective assistance of counsel by the manner in which discovery is being provided, and not provided.

WHEREFORE, Defendants pray this Honorable Court grant a mistrial.


Respectfully submitted,


/s/ Kimberly W. Stout
KIMBERLY W. STOUT (P38588)
Attorney for Defendant
370 E. Maple Road, 3rd Floor
Birmingham,  MI   48009
(248)258-3181


Dated: Nov.   23 , 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

  vs.                            Case No. 11-20129

VINCENT WITORT,   D-8,             Honorable Robert H. Cleland

       Defendant.

_____/

## **CERTIFICATE OF SERVICE**

    I certify that on November 23, 2014, I filed by ECF electronic filing, the foregoing

document with notice upon:

Saima S. Mohsin
Eric M. Straus
Jerome M. Maiatico
Assistant United States Attorneys

/s/ Kimberly W. Stout (P38588)

16